**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE**

|  |  |  |
|---|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., | ) | |
| *Plaintiff,* | ) | |
| COLAKOGLU DIS TICARET A.S. | ) | |
| *Plaintiff-Intervenor,* | ) | |
| COLAKOGLU METALURJI A.S., | ) | Court No. 25-0025 |
| *Plaintiff-Intervenor,* | ) | |
| v. | ) | |
| THE UNITED STATES, | ) | |
| *Defendant,* | ) | |
| and | ) | |
| REBAR TRADE ACTION COALITION, | ) | |
| *Defendant-Intervenor.* | ) | |

<u>**PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD AND ACCOMPANYING MEMORANDUM OF POINTS AND AUTHORITIES PURSUANT TO RULE 56.2**</u>

Daniel L. Delnero
**BGD LEGAL & CONSULTING**
3017 Bolling Way NE, Suite 130
Atlanta, GA 30305
daniel.delnero@bgdlc.com
(770) 864-7740

Date: May 3, 2026

*Counsel for Kaptan Demir Celik Endustrisi ve Ticaret A.S.*

**TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………………………………...……………1

II.     RULE 56.2 STATEMENT……………………………………………………………..2

III.    ISSUES PRESENTED & RELIEFT SOUGHT…………………………………………...3

STATEMENT OF FACTS………………………………………………………………..4

    A.  The Nur Leasehold………………………………………………………..............4

    B.  The Colliers Review…………………………………………………………………5

    C.  The Cushman & Wakefield Report…………………………………………………..6

    D.  Commerce Rejects the Cushman & Wakefield Report and Applies the Colliers Review

        Without Substantial Evidence or Justification…………………………………..……..7

STANDARD OF REVIEW………………………………………..……………….....................9

ARGUMENT…………………………………………………………………….……10

    I.      Commerce's Decision to use the Collier's Review Rather Than the Cushman & Wakefield Report Is Not Supported by Substantial Evidence…………..…….……..10

        A.  Use of the Colliers Review Is Not Reasonable…………………………………11

            i.    Use of a benchmark of Greater Istanbul land values for undeveloped reclaimed land located 750 miles away is *per se* unreasonable and not supported by substantial evidence…..…………….....................................12

            ii.   The Colliers Review is not a valuation and cannot be used to value real estate values, particularly in a distant province 750 miles from the focus of the Review……………………………………………………………...14

                a.  The Colliers Review does not meet the substantial evidence test because it does not disclose any underlying data, rendering it unreliable…………………………………………………………15

                b.  The Colliers Review is unreliable and not supported by substantial evidence because it does not disclose the method by which the rent values were calculated………………………………………………17

B.  Commerce's Rejection of the Cushman & Wakefield Report is not Supported By Substantial Evidence…………………………………………………….……….17

    i.     The record contains no evidence – substantial or otherwise – showing the Cushman & Wakefield Report is a "litigation-inspired exaggeration."……………...18

C.  The Cushman & Wakefield Report Is the *Only* Evidence in the Record of the Value of the Nur Leasehold in Trabzon……………………...……………..19

D.  The Cushman & Wakefield Report demonstrates that reliance on data from Greater Istanbul is flawed and not supported by substantial evidence………......20


CONCLUSION………………………………………………………………………...21

# TABLE OF AUTHORITIES

## CASES

*24/7 Records, Inc. v. Sony Music Ent., Inc.*,
  514 F. Supp. 2d 571 (S.D.N.Y. 2007) ..................................................................... 17

*Asociacion Colombiana de Exportadores de Flores v. United States*,
  6 F. Supp. 2d 865 (Ct. Int'l Trade 1998) ............................................................... 10

*Bando Chem. Indus. v.  United States*,
  787 F. Supp. 224 (Ct. Int'l Trade 1992) ................................................................. 10

*Burlington Truck Lines, Inc. v. United States*,
  371 U.S. 156 (1962) ................................................................................................. 10

*Cayuga Indian Nation of New York v. Pataki*,
  83 F. Supp. 2d 318 (S.D.N.Y. 2000) ...................................................................... 16

*Chevron, U.S.A., Inc. v. N.R.D.C., Inc.*,
  467 U.S. 837 (1984). ............................................................................................... 10

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938).………………………………………………………………...9

*CS Wind Malaysia Sdn. Bd. v. United States*,
  Slip Op. 25-149, 2025 WL 3496986 (C.I.T. Dec. 5, 2025) ........................................ 12, 13, 20

*Daewoo Elecs. Co. v. Int'l Union of Electronic Elec., Tech., Salaried & Mach. Workers, AFL-CIO*,
  6 F.3d 1511 (Fed. Cir. 1993) ................................................................................... 9

*DuPont Teijin Films USA, LP v. United States*,
  407 F.3d 1211 (Fed. Cir. 2005) ............................................................................... 9

*Gallant Ocean (Thailand) Co. v. United States*,
  602 F.3d  1319 (Fed. Cir. 2010) .............................................................................. 9

*Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. US*,
  803 F. Supp. 3d 1276 (CIT, 2025) (Court No. 23-00131, Slip Op. 25-130) ............................. 11

*Kaptan Demir Celik Endustrisi ve Ticaret A.S., et al. v. United States,*
  Court No. 23-00131; Slip Op. 24-116 (CIT October 21, 2024)(2020 Final Remand Results)... 8

*Kaptan Demir Celik Endustrisi ve Ticaret A.S., et al. v. United States,* Court No. 24-00096, Slip Op. 25-131 (CIT October 6, 2025)*( 2021 Final Remand Results) ..................................... 8, 11,13

iii

*Lickteig v. Cerberus Cap. Mgmt., L.P.,*
   589 F. Supp. 3d 302 (S.D.N.Y. 2022)...................................................................................... 18

*Loper Bright Enterprises v. Raimondo*,
   144 S. Ct. 2244 (2024) ............................................................................................................ 10

*Nippon Steel Corp. v. United States*,
   337 F.3d 1373 (Fed. Cir. 2003) ................................................................................... 12, 14, 17

*Old Gate Partners, LLC v. Paddock Enterprises, LLC*,
   2024 WL 3520168 (D. Conn. May 30, 2024) .......................................................................... 16

*Ozdemir Boru San. Ve Tic Ltd. Sti. v. United States*,
   273 F. Supp. 3d. 1225 (C.I.T. 2017............................................................................... 12, 13

*Rhone-Poulenc, Inc. v. United States*,
   927 F. Supp. 451 (Ct. Int'l Trade 1996) ................................................................................ 10

*United States v. Guo*,
   23 Cr. 118, 2024 WL 2262706 (S.D.N.Y. May 17, 2024)....................................................... 17

*Water Pollution Control Auth. of City of Norwalk v. Flowserve US Inc.*,
   No. 14-CV-00549, 2018 WL 1525709 (D. Conn. March 28, 2018)......................................... 16

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ........................................................................................................9

19 U.S.C. § 1677f(i)(3)(A)…………………………………………………………………....12

**Regulations**

19 C.F.R. § 351.511(a)(2)(i)…………………………………………………………………...12

**Administrative Determinations**

*Steel Concrete Reinforcing Bar From the Republic of Turkïye,* 90 Fed. Reg. 44167 (Dep't Commerce Sep. 8, 2025) (final CVD results 2022) ("*Final Results*").

iv

## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., | ) |
| *Plaintiff,* | ) |
| COLAKOGLU DIS TICARET A.S. | ) |
| *Plaintiff-Intervenor,* | ) |
| COLAKOGLU METALURJI A.S., | ) Court No. 25-0025 |
| *Plaintiff-Intervenor,* | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| *Defendant,* | ) |
| and | ) |
| REBAR TRADE ACTION COALITION, | ) |
| *Defendant-Intervenor.* | ) |

### PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD AND ACCOMPANYING MEMORANDUM OF POINTS AND AUTHORITIES PURSUANT TO RULE 56.2

### I. INTRODUCTION

This case involves a single issue: the proper metric to value a 49-year lease held by Nur, an affiliated company of Plaintiff Kaptan Demir Celik Endustrisi ve Ticaret A.S. ("Kaptan") (the "Nur Leasehold"). The Nur Leasehold is located in the remote region of Surmene, Trabzon, which is located in Western Turkey near the Iranian border. Here, as in other periods of review, Commerce and the Rebar Trade Action Coalition ("RTAC") submit that a trend review from Colliers International should be used to value the Leasehold because it was prepared independently

1

and not at the request of any party.

Kaptan agrees with Commerce and the RTAC that an independent report valuing the Nur Leasehold should be accepted over a report prepared by an interested party. The problem, though, is that the Colliers Review does not value the Nur Leasehold at all. Instead, it discusses real estate trends in a European section of Greater Istanbul. The Colliers Review therefore has no relevance to undeveloped, non-industrial land located 750 miles away, in a remote region of Turkey, on the Continent of Asia.

The Cushman & Wakefield Report, by contrast, actually values the specific land of the Nur Leasehold. It is therefore the only evidence in the record establishing a value for the Leasehold. And while an independent study of the actual land value of the Nur Leasehold might be preferable – including an independent study from Colliers, which is certainly capable of conducting such a study – one simply does not exist.

Accordingly, the only evidence in the record establishing a value for the Nur Leasehold is the Cushman Wakefield Report. Commerce's theoretical preference for a non-existent independent study cannot overcome that evidentiary reality. Kaptan therefore respectfully requests that the Court remand the case to Commerce to redetermine the CVD margin using the values set forth in the Cushman & Wakefield Report.

**II. RULE 56.2 STATEMENT**

Kaptan seeks judicial review of the final results in the 2022 administrative review of the countervailing duty order on *Steel Concrete Reinforcing Bar From the Republic of Turkey* ("Rebar from Turkey"). The U.S. Department of Commerce's ("Commerce") final results were published in the *Federal Register* on September 12, 2025. P.R. 291, *Steel Concrete Reinforcing Bar from the Republic of Turkïye,* 90 Fed. Reg. 44167 (Dep't Commerce Sep. 8, 2025) (final CVD results 2022)

("*Final Results*"). Commerce's factual and legal conclusions underlying the *Final Results* are set forth in P.R. 286, Memorandum from S. Fullerton to C. Abbott, re: Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Steel Concrete Reinforcing Bar from the Republic of Turkïye; 2022 (Sept. 8, 2025) ("*Final IDM*").

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Plaintiff Kaptan Demir Celik Endustrisi ve Ticaret A.S. ("Kaptan") submits this motion for judgment on the agency record and accompanying memorandum of points and authorities to challenge the final affirmative determination as set forth below. Kaptan respectfully requests that the Court remand this matter to Commerce for redetermination consistent with the opinion of this Court.

### III. ISSUES PRESENTED & RELIEF SOUGHT

This case involves a single issue:

Issue 1: Were Commerce's decisions to a) rely on the Colliers Review and b) reject the Cushman & Wakefield Report supported by substantial evidence?

Short Answer: No. Under the substantial evidence test, Commerce was not justified in using the Colliers Review of trends in the Greater Istanbul real estate market to value a lease of undeveloped, non-industrial land located 750 miles away in the remote region of Surmene, Trabzon.

Kaptan therefore respectfully requests that the Court issue an order finding that Commerce's decisions to reject the Cushman & Wakefield Report and apply the Colliers Review are not supported by substantial evidence.

3

**STATEMENT OF FACTS**

This case involves the proper metric to value a leasehold of undeveloped land located in the rural province of Surmene, Trabzon, in the Black See region of Turkey (the "Nur Leasehold"). Commerce and the Rebar Trade Association – a special interest group comprised of domestic rebar manufacturers – contend that the Nur Leasehold should be valued according to real estate trends for industrial property in Greater Istanbul. The source of those Greater Istanbul trends is marketing material published by Colliers International (the "Colliers Review") that specifically states it is not intended to be used to value real estate:

> This report gives information primarily on Collier's data, *which may be helpful in anticipating trends in the property sector*. However, no warranty is given as to the accuracy of, and no liability for negligence is acceptance in relation to, the forecasts, figures, or conclusions contained in this report and they must not be relied on for investment or any other purposes. This report does not constitute and must not be relied on for investment or any other purposes. *This report does not constitute and must not be treated as investment or valuation advice* or an offer to buy or sell property.

*See* P.R. 221, *Rebar Trade Action Coalition Letter*, "Submission of Benchmark Information," November 7, 2025 (RTAC's Benchmark Submission) Ex. 1 ("Colliers, Turkey Real Estate Market Review, First Half 2022") at 21, Ex. 2 ("Colliers, Turkey Real Estate Market Review, Second Half 2022") at 21 (emphasis added.)

Commerce's use of this marketing material – which is neither a valuation nor an analysis of the location at issue – is the sole issue in the present motion.

**A. The Nur Leasehold**

Kaptan is a producer of steel concrete reinforcing bar (commonly called "rebar") in the Republic of Turkey. For purposes of this Motion, the only issue is whether Commerce's decision to use a Colliers real estate trends document and disregard a Cushman & Wakefield Report to value

4

a lease held by Nur Gemicilik ve Ticaret A.S. ("Nur"), an affiliated company to Kaptan (the "Nur Leasehold"), is supported by substantial evidence.

Nur, a shipbuilding entity, received vacant, undeveloped land in the remote province of Trabzon on a rent-free basis for a period of 49 years in 2014. *See* C.R. 255, Letter from Law Offices of David L. Simon, PLLC to Sec'y Commerce, re: Steel Concrete Reinforcing Bar from Turkey; Kaptan Benchmark Submission (November 7, 2024) ("Kaptan Benchmark Submission"), Ex. 1 ("C&W Report"), at 13-15. The land consisted of property reclaimed from the Black Sea in a region 750 miles from Istanbul, far closer to the Armenian and Iranian borders than to Istanbul or the European section of Turkey. *See* C.R. 255, Kaptan's Benchmark Submission, Ex. 1, C&W Report at 11. Pursuant to the program, Nur was required to develop the land into industrial or commercial use. *Id.* at 13.

In its review covering the 2022 period, Commerce determined that the Nur Leasehold was countervailable and attributable to Kaptan. Commerce calculated the value of the Nur Leasehold by multiplying the square meter of the lease by the value per square meter of industrial land in the suburban Istanbul city of Cerkezkoy, as taken from the Colliers Review. Commerce's use of the Colliers Review, rather than a valuation report from Cushman & Wakefield that actually valued the Nur Leasehold, is the only issue in this Motion.

**B. The Colliers Review**

Commerce based its valuation of the Nur Leasehold entirely on the Colliers Review. *See* P.R. 291, *Final Results* at 9. The Colliers Review reviewed trends in real estate for the Greater Istanbul market. For industrial real estate, it reviewed eight regions of Greater Istanbul. *See* P.R. 221, Ex 1 at 8, Ex. 2 at 9. Commerce valued the Nur Leasehold based on the value given for industrial space in the Cerkezkoy neighborhood, which is located in Western Istanbul on the

5

European side of the city. *See* P.R. 221, Ex. 1 at 8-10, Ex. 2 at 9-11. The Colliers Review is not signed or dated. *See* P.R. 221, Ex. 1 at 21, Ex. 2 at 21.

The Colliers Review listed the price per square meter of industrial space in the Cerkezkoy neighborhood at 70 Turkish Lyra per square meter in the second quarter of 2022 and 74.80 Turkish Lyra per square meter in the fourth quarter 2022. *See* P.R. 221, Ex. 1 at 10, Ex. 2 at 11.[1] It does not, however, cite any actual lease agreements or rental transactions to support the rental values stated for Cerkezkoy or the other seven Istanbul neighborhoods listed in the report. Instead, it simply says "Source: Colliers International," without disclosing *any* underlying data. *See* P.R. 221, Ex. 1 at 10, Ex. 2 at 11.

The final page of the Colliers Review makes it clear that it is not a valuation report and that it should not be treated as a valuation report:

> This report gives information based primarily on Colliers International data, which may be helpful in anticipating trends in the property sector. However, no warranty is given as to the accuracy of, and no liability for negligence is accepted in relation to, the forecasts, figures or conclusions contained in this report *and they must not be relied on for investment or any other purposes. This report does not constitute and must not be treated as investment or valuation advice or an offer to buy or sell property.*
>
> *See* P.R. 221, Ex. 1 at 21, Ex. 2 at 21 (Emphasis added.).

Again, the Colliers Review is not signed by anyone, does not disclose an author, does not disclose any underlying data, and does not indicate that it follows any standards applicable to real estate valuation.

**C. The Cushman & Wakefield Report**

---

[1] There's an unexplained discrepancy in the Colliers Reviews for 2022. Specifically, between the 2021 Q4 numbers in the first report is different to the same in the  second report. In Collier Review I (first half) number is 32 for 2021 Q4, whereas in Collier Review II (second half) the number is 70 for 2021 Q4.

Because no existing reports, or even trend analysis, cover the Trabzon or Surmene regions, Kaptan commissioned a report from the internationally respected real estate firm Cushman & Wakefield. *See* C.R. 255, C&W Report at 1. Unlike the Colliers Review, the Cushman & Wakefield Report analyzed the value of real estate in the village of Surmene, province of Trabzon, Turkey – the actual location of the Nur Leasehold. *Id.* at 5, 12, 28.

The Cushman & Wakefield Report also differs from the Colliers Review in that it is based on independent standards in the valuation industry; specifically, the RICS Valuation Standards, Current Edition ("RICS Red Book"). *See* C.R. 255, C&W Report at 5. The Cushman & Wakefield Report analyzed rental values in Trabzon based on data available in 2022. *Id.* at 29. This number was based on actual asking prices for industrial areas *in Trabzon*, which is the closest city to the Nur Leasehold for which transactional data is available. *Id.* at 28-29. The average rental price for 2022 for this region was $0.37 per square meter (5.40 Turkish Lyra) – less than 50 cents per square meter. *Id.*

The Cushman & Wakefield Report also discussed differences between Trabzon and the Greater Istanbul region referenced in the Colliers Review:

> It should be noted that given regions [in the] above graph [North Marmara regions listed in Colliers] are major industrial zones in Turkey. Trabzon is a tertiary city in terms of population and economy . . . it is not classified as an industrial zone, the city is not preferred by national and industrial investor or occupiers. The city [is] preferred by local investor in general. Rent prices are quite low when compare[d] to North Marmara region. And also the given prices [in the Colliers Review] are for industrial facilities rather than vacant land.

> *See* C.R. 255, C&W Report at 21.

## D. Commerce Rejects the Cushman & Wakefield Report and Applies the Colliers Review Without Substantial Evidence or Justification.

As mentioned above, Commerce previously rejected the Cushman & Wakefield Report and applied the Colliers Review. Commerce's justifications for prior review periods were 1) the

Cushman & Wakefield Report was commissioned by an interested party and 2) the Cushman & Wakefield Report relied on data from 2022 rather than the period at issue. *Kaptan Demir Celik Endustrisi ve Ticaret A.S., et al. v. United States,* Court No. 23-00131; Slip Op. 24-116 (CIT October 21, 2024)(2020 Final Remand Results); *Kaptan Demir Celik Endustrisi ve Ticaret A.S., et al. v. United States,* Court No. 24-00096, Slip Op. 25-131 (CIT October 6, 2025)( 2021 Final Remand Results). The timing issue obviously cannot be used to justify rejection of the Cushman & Wakefield Report for the 2022 Period of Review, as all of the data contained in the Report is from the review period. *See* C.R. 255, C&W Report at 28-29.

Commerce's sole justification for rejection of the Cushman & Wakefield Report is therefore its connection that the Report "incorporates a 'risk of litigation inspired fabrication or exaggeration.'" *See* C.R. 286, *Final IDM* at 10.[2] As with prior years, however, Commerce has not cited any evidence that the Cushman & Wakefield Report is in any way fabricated or exaggerated – let alone any evidence supporting the allegation that it is a "litigation inspired fabrication or exaggeration." *Id.* at 10-11.

Commerce and the RTAC also do not offer any evidence, or even argument, that the data on which the Cushman & Wakefield Review is based is not accurate. Again, the Cushman & Wakefield Report, utilizing actual rental prices, determined an average rental value for the Trabzon Region of 5.40 Turkish Lyra, or $0.37. *See* C.R. 255, C&W Report at 28. The Colliers Review, using some undisclosed data sources that are apparently internal to Colliers, listed values in the Greater Istanbul Region in the 70-75 Turkish Lyra range – approximately *twelve times greater*. See P.R. 221, Ex. 1 at 10, Ex. 2 at 11. Commerce does not offer any explanation for this significant difference in values or even attempt to do so. Instead, it simply states that Kaptan did not

---

[2] Although the IDM does not cite the quoted reference, it appears to be a quote from the 2020 or 2021 issue and decision memorandum.

adequately explain how the differences it identified – distance from the Istanbul megalopolis, industrialization, per capital GDP, volume of international and domestic trade – contribute to the significant difference in real estate values. *See* C.R. 286, *Final IDM* at 10-11. The difference in real estate values themselves, however, demonstrate that these factors weigh heavily on the value of the land.

## STANDARD OF REVIEW

This Court "shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). When reviewing whether Commerce's actions are unsupported by substantial evidence, the Court assesses whether the agency action is "unreasonable" given the record as a whole. Substantial evidence represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005), quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938).

The Court therefore "reviews the record as a whole,  including any evidence that fairly detracts from the substantiality of  the evidence," *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d  1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation  omitted), and determines "whether the evidence and reasonable inferences  from the record support {the agency's} finding." *Daewoo Elecs. Co. v. Int'l Union of Electronic Elec., Tech., Salaried & Mach. Workers, AFL-CIO*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (internal  quotation marks and citation omitted).

9

This Court has found Commerce's determinations unlawful "where Commerce has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions." *Rhone-Poulenc, Inc. v. United States*, 927 F. Supp. 451, 454 (Ct. Int'l Trade 1996); *see also Asociacion Colombiana de Exportadores de Flores v. United States*, 6 F. Supp. 2d 865, 880 (Ct. Int'l Trade 1998). Commerce must provide a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962), and the "reasons for the choices made {by Commerce} among various potentially acceptable alternatives usually need to be explained." *Bando Chem. Indus. v. United States*, 787 F. Supp. 224, 227 (Ct. Int'l Trade 1992), *aff'd* 26 F.3d 139 (Fed. Cir. 1994).

In all cases, Commerce's determinations must be consistent with the governing statute and the agency's regulations. When reviewing Commerce's statutory interpretations, the Court applies the standard articulated by the Supreme Court of the United States in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), which overruled *Chevron, U.S.A., Inc. v. N.R.D.C., Inc.*, 467 U.S. 837 (1984). Commerce's interpretations of statutory provisions are not entitled to deference by this Court. Instead, "{c}ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority," *Loper Bright*, 144 S. Ct. at 2273, and whether the agency's interpretation reflects "the best reading of the statute{.}" *Id.* at 2266.

## ARGUMENT

### I. Commerce's Decision to use the Collier's Review Rather Than the Cushman & Wakefield Report Is Not Supported by Substantial Evidence.

The sole issue remaining for resolution relates to Commerce's use of a marketing material from Colliers International (the "Colliers Review") regarding real estate trends in Greater Istanbul to value a rent-free lease to Nur, an alleged affiliated entity of Kaptan, located in Trabzon, around 750 miles away.

10

This is the third case in which Commerce's use of irrelevant marketing material from Istanbul to value a leasehold in Trabzon is at issue. The first case is currently on appeal to the Court of Appeals for the Federal Circuit in Case Number 2026-1229. In that case, the CIT originally remanded for the same reasons as it did so here: that Commerce did not sufficiently consider Kaptan's arguments that a report from Cushman & Wakefield valuing land in Trabzon should be used instead of the Colliers Review. *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. US*, 803 F. Supp. 3d 1276, 1289 (CIT, 2025) (Court No. 23-00131, Slip Op. 25-130). Following the remand redetermination, however, the CIT sustained Commerce's use of the Colliers Review. *Id*. at 1290-91. The second case is pending before the CIT following a remand for redetermination, after which Commerce again re-affirmed its decision to use marketing material discussing trends in the Greater Istanbul market to value undeveloped, non-industrial land 750 miles away. *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. US*, 803 F.Supp.3d 1291, 1314 (CIT, 2025) (Court No. 24-00096, Slip Op. 25-131).

As in those cases, Kaptan maintains that Commerce must use the Cushman & Wakefield Report rather than the Colliers Review to value the Nur Leasehold. The Cushman & Wakefield Report is the only document that: 1) is a valuation at all and 2) analyzes the actual value of the property at issue, rather a trend review for property located 750 miles away, on a different continent, in the largest city in Europe.

**A. Use of the Colliers Review Is Not Reasonable.**

The core purpose of countervailing duties is to provide "adequate remuneration" to offset subsidies offered by foreign governments for goods exported to the US:

> The Secretary will normally seek to measure the adequacy of remuneration by comparing the government price to a market-determined price for the good or service resulting from actual transactions in the country in question. Such a price could include prices stemming from actual transactions between private parties or

actual imports. In choosing such transactions or sales, the Secretary will consider product similarity; quantities sold or imported; and other factors affecting comparability.

19 C.F.R. § 351.511(a)(2)(i).

In the case of a land subsidy to an exporter, "adequate remuneration" is determined by comparing the price paid and the fair rental value of the land in question. *See, e.g., Ozdemir Boru San. Ve Tic Ltd. Sti. v. United States*, 273 F. Supp. 3d. 1225, 1249-53 (C.I.T. 2017 (rejecting Commerce's use of a benchmark that included land values in Istanbul to determine the value of land in a lesser developed area of Turkey). Here, that means Commerce had to determine the rental value of the undeveloped industrial land in Surmene, Trabzon. *See CS Wind Malaysia Sdn. Bd. v. United States*, Slip Op. 25-149, 2025 WL 3496986 at *4-5 (C.I.T. Dec. 5, 2025)

In conducting this evaluation, Commerce must put forth "an explanation of the basis for its determination that addresses relevant arguments, made by interested parties who are parties to the investigation or review." 19 U.S.C. § 1677f(i)(3)(A). The explanation must account for contradictory evidence and may only be affirmed if supported by "substantial evidence," which is evidence sufficient that "a reasonable mind might accept as adequate to support a conclusion." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003). Despite multiple attempts, Commerce has not put forth a reasoned explanation, supported by substantial evidence, that justifies using marketing material related to real estate trends in Greater Istanbul to value a province located 750 miles away in a rural area.

      **i.**      **Use of a benchmark of Greater Istanbul land values for undeveloped reclaimed land located 750 miles away is *per se* unreasonable and not supported by substantial evidence.**

The CIT has previously rejected Commerce's use of land values in Greater Istanbul to calculate CVD margins for property in lesser developed areas of the country. *See, e.g., Ozdemir*,

12

273 F. Supp. 3d. 1249-53. The *Ozdemir* court held that the benchmark used by Commerce was "distorted" and not supported by substantial evidence because it included sales of Istanbul properties in addition to properties in lesser developed regions. *Id.* at 1252-53. The CIT similarly rejected Commerce's use of a land benchmark in *CS Wind*, faulting Commerce for "elid[ing] CS Wind's argument that the Ellis rental price in Penang is not comparable to its lease rate in Pahang due to the disparity in real estate costs between the two Malaysian jurisdictions." *CS Wind*, 2025 WL 3496986, at \*5.

This case presents an even more striking problem than *Ozdemir*, in which Commerce included higher-value properties in Istanbul amidst a broader basket of transactions. *Ozdemir*, 273 F. Supp. 3d. 1252-53. Here, Commerce relies *solely* on data from the higher-developed, suburban Istanbul market of Cerkozkov, a high-rent suburb on the European side of Istanbul. *Final IDM* at 9-11. The Colliers Review does not take into account *any* transactions from more remote and less developed markets such as Trabzon, the location of the actual Nur Leasehold at issue. *See* P.R. 221, Ex. 1, Ex. 2. Instead, the Colliers Review relies *exclusively* on Greater Istanbul data the CIT found to be distortive even to include as part of a broader basket of transactions. *See Ozdemir*, 273 F. Supp. 3d. 1252-53.

In prior proceedings Commerce admitted that "[t]he Colliers Review does not contain an explanation of how other provinces are affected by the Istanbul market, or, relatedly, a quantification of ow various factors, such as gross domestic product (GDP), distance from the center of Istanbul, or level of development of the property, affect rental rates." *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, Court No. 24-00096; Slip Op. 25-131 (CIT October 6, 2025) ("*Draft Results*") at 19. Commerce thus admits that an analysis of the Istanbul market tells you nothing about a market located around 750 miles away, in a less developed area of the country.

13

Use of the Colliers Review should therefore be reconsidered as the Istanbul market trends contained in it is not something "a reasonable mind might accept as adequate to support a conclusion" of the value of the Nur Leasehold in Trabzon. *Nippon Steel Corp.*, 337 F.3d at 1379.

> **ii.    The Colliers Review is not a valuation and cannot be used to value real estate values, particularly in a distant province 750 miles from the focus of the Review.**

In addition to covering the wrong geographical area – Greater Istanbul instead of Trabzon – the Colliers Review is really a marketing tool for Colliers, not an actual valuation of land values. We know this from the disclaimer in the report itself:

> This report gives information based primarily on Colliers International data, which may be helpful in anticipating trends in the property sector. However, no warranty is given as to the accuracy of, and no liability for negligence is accepted in relation to, the forecasts, figures or conclusions contained in this report *and they must not be relied on for investment or any other purposes. This report does not constitute and must not be treated as investment or valuation advice or an offer to buy or sell property.*

*See* P.R. 221, Ex. 1, Colliers Review I at 21; and P.R. 221, Ex. 2, Colliers Review II at 21. (emphasis added).

Commerce has previously brushed aside this limitation on the Colliers Review and the data contained in it by focusing on the disclaimer of liability rather than the limitation on accuracy. *Draft Results* at 24. The waiver of liability, however, is not the relevant part of the disclaimer and is simply a red herring used by Commerce to avoid the true issue: Colliers itself says the data is not reliable for valuation purposes.

The key point of the disclaimer is that the Colliers Review itself states that it "must not be treated as . . . valuation." P.R. 221, Ex. 1 at 21, Ex. 2 at 21. But that is precisely how Commerce is using it – as a valuation. And Commerce did not simply include the Colliers Review as one of many sources for finding a value; it used the report as the *sole* source of valuation to impose over $1 million worth of countervailing duties. *See* C.R. 286, Final IDM at 9-11. The Colliers Review

itself states that the report should not be – in fact, cannot be – used for that purpose. P.R. 221, Ex. 1 at 21, Ex. 2 at 21.The reasons why the Colliers Review states that it cannot be used as a valuation document are also clear from the document itself: 1) it is not based on the type of data that would be required to perform a true valuation; and 2) it does not purport to follow any industry valuation standard.

### a. The Colliers Review does not meet the substantial evidence test because it does not disclose any underlying data, rendering it unreliable.

The Colliers disclaimer states that the Review is "based primarily on Colliers International data." P.R. 221, Ex. 1 at 21, Ex. 2 at 21. The industrial rental values for Cerkozkoy used by Commerce simply state "Sources: Colliers International" in support of the pricing.*See* P.R. 221,Ex. 1 at 10, Ex. 2 at 11. The Review is not even meant to be a broad-based valuation of rental values in Greater Istanbul; it simply provides an indication of "trends in the property sector" based on inhouse data. P.R. 221, Ex. 1 at 21, Ex. 2 at 21.

 In fact, the true purpose of the report is made even clearer from the final page, stating "for more information" to contact a particular individual regarding "valuation and advisory services" and another for "marketing & PR." *Id.*

The Colliers Review is therefore not meant to provide a meaningful valuation of even real estate prices in Greater Istanbul. It is intended to indicate general familiarity with the Greater Istanbul market and to generate business for Colliers. That is not to say that Colliers would be incapable of generating an actual valuation report. It plainly would but also recognized that the marketing material on which Commerce and CIT relied should not, and cannot, be used for that purpose.[3] The fact that Commerce has relied on Colliers in other matters is therefore irrelevant.

---

[3] To that end, Kaptan would have no issue if it and Commerce jointly retained Colliers to provide an independent valuation of the Nur Leasehold and would accept the Colliers analysis as binding for all relevant review periods.

*See* C.R. 286, *Final IDM* at 10 (discussing use of Colliers data to value land in India). A report from Colliers would certainly be relevant if it: 1) covered Trabzon, a rural area in Western Turkey rather than Istanbul, the largest city in Europe and 2) was an actual valuation report rather than marketing material discussing broad trends. But neither of those factors are present here.

Federal courts often reject expert valuation reports when the expert either does not sufficiently disclose the underlying data used to calculate value or where the underlying data is objectively unreliable. *See, e.g., Cayuga Indian Nation of New York v. Pataki*, 83 F. Supp. 2d 318, 324 (S.D.N.Y. 2000) ("Obviously, to the extent the sales data used in the first step of this process is inaccurate, it significantly impacts all subsequent calculations upon which it is based. . . . [B]ecause the reliability of Havemeyer's data is uncertain, the reliability of his fair market value in any given year, based upon that data, strongly suggests that his appraisal may potentially suffer from a significant rate of error."); *Water Pollution Control Auth. of City of Norwalk v. Flowserve US Inc.*, No. 14-CV-00549, 2018 WL 1525709, at *17 (D. Conn. March 28, 2018), *aff'd*, 782 Fed. Appx. 9 (2d Cir. 2019) (excluding an expert's opinion due to the expert's "failure to disclose the calculations and data on which her opinions are based"); *Old Gate Partners, LLC v. Paddock Enterprises, LLC*, 2024 WL 3520168, at *11 (D. Conn. May 30, 2024) (rejecting a valuation report for failure to disclose the underlying data used).

The only thing we know about the data used by Colliers is that it relates to Greater Istanbul and not Trabzon, 750 miles away. The Colliers Review does not disclose any information about other transactions on which it is based, whether those transactions are even from the Cerkezkoy area, or the type of industrial property valued. It is therefore not something "a reasonable mind might accept as adequate to support a conclusion" because, quite literally, it provides no data on

16

which to support a conclusion. *Nippon Steel Corp., 337 F.3d at 1379.* Commerce should therefore follow the Colliers Review's own instructions and not treat it as a valuation.

**b. The Colliers Review is unreliable and not supported by substantial evidence because it does not disclose the method by which the rent values were calculated.**

Even if the Colliers Review were based on objectively reliable data – which it is not – it must still be rejected because it does not disclose *any* information regarding the methodology used to arrive at rental values. *See, e.g., United States v. Guo,* 23 Cr. 118, 2024 WL 2262706, at *9 (S.D.N.Y. May 17, 2024) ("Without any description of Dragon's methodology or conclusions, the Court cannot be certain of the reliability of Dragon's approach, and the Government cannot properly cross-examine Dragon regarding his assumptions, conclusions, or even his arithmetic. Accordingly, Dragon shall not testify as to the Income and Market Methods."); *24/7 Records, Inc. v. Sony Music Ent., Inc.*, 514 F. Supp. 2d 571, 576 (S.D.N.Y. 2007) (precluding a valuation opinion where the expert did not "explain how he valued [certain] factors nor how he assessed their relative significance").

Unlike the Cushman & Wakefield Report, the Colliers Review does not explain how it generated rental values in Cerkezkoy from whatever underlying data it analyzed. We simply do not know whether Colliers made any adjustments based on inflation, differences in value based on property type, or differences in value based on lease terms. All we have is two numbers – 70 TL/m2 for Q2 2022 and 74.80 TL/m2 for Q4 2022 – with no explanation of how those numbers were calculated or derived. *See* P.R. 221, Ex. 1 at 10, Ex. 2 at 11.  Accordingly, the Colliers Review does not provide any basis on which a person could reasonably conclude the value of property in Cerkozkoy, let alone Trabzon, 750 miles away, and must be rejected.

**B. Commerce's Rejection of the Cushman & Wakefield Report is not Supported By Substantial Evidence.**

Despite presenting a detailed analysis of rental values in Trabzon, the location of the Nur Leasehold, Commerce gave zero weight to the Cushman & Wakefield Report, relying instead on marketing material discussing land values in a suburb of Istanbul located 750 miles away from the Nur Leasehold. Commerce's justification for doing so is a stated preference for independent valuations rather than those generated for use in litigation. This argument, however, is not based on any actual evidence to justify the accusation that the Cushman & Wakefield Report is in any way fabricated or exaggerated.

**i. The record contains no evidence – substantial or otherwise – showing the Cushman & Wakefield Report is a "litigation-inspired exaggeration."**

Commerce has not pointed to any evidence of "litigation-inspired exaggeration." Final IDM at 10. That is a very serious accusation – quite literally accusing the internationally respected company Cushman & Wakefield of misrepresenting the rental value of land in Trabzon, Turkey on behalf of a single client. And in support of this accusation, Commerce points only to the fact that Kaptan commissioned the Report. The record does not contain *any* evidence that the Cushman & Wakefield Report misrepresented or minimized the land values in Trabzon, for litigation purposes or otherwise. Accordingly, this entire line of argument should be rejected as not supported by even a scintilla of evidence, let alone substantial evidence.

The actual evidence in the record establishes that the Cushman & Wakefield Report is both independent and reliable as it follows industry valuation standards. *See Lickteig v. Cerberus Cap. Mgmt., L.P.,* 589 F. Supp. 3d 302, 332 (S.D.N.Y. 2022) (permitting reliance on standard valuation methodologies where it was clear that the expert "applied such industry-standard valuation methodologies").

18

The Cushman & Wakefield Report was made in accordance with the RICS Valuation Standards, current edition ("RICS Red Book"), a copy of which is in the administrative record. *See* C.R. 255, C&W Report at 5; C.R. 255, Ex. 4 ("RICS Red Book").

Cushman & Wakefield also set forth the actual property transactions it used to calculate the value of the Nur Leasehold. See C.R. 255, C&W Report at 28-29. Finally, the Report discussed the specifics of the actual Nur Leasehold, including the details of the lease agreement and a description of the economy in the surrounding area of Trabzon. *Id.* at 11-18.

Commerce has never taken issue with the data on which Cushman & Wakefield relied or the methodology Cushman & Wakefield used to perform the valuation. Similarly, Commerce has not taken issue with the RICS Valuation Standards or claimed that Cushman & Wakefield failed to follow those industry-leading standards. Commerce has therefore failed to support the conclusion that the Cushman & Wakefield Report is a "litigation-inspired exaggeration" with any evidence, let alone substantial evidence. For this reason too, the Nur Leasehold should be valued according to the Cushman & Wakefield Report, not the Colliers Review.

### C. The Cushman & Wakefield Report Is the *Only* Evidence in the Record of the Value of the Nur Leasehold in Trabzon.

This is not a case where Commerce has discretion to choose between two reasonable but competing valuations. Only one report – the Cushman & Wakefield Report – even attempts to value the Nur Leasehold. *See* C.R. 255, C&W Report. at 28-30. And only one report – the Cushman & Wakefield Report – analyzes the value of the actual land at issue, located in Trabzon. *Id.* This is therefore not a case of two reasonable, competing valuation reports. It is a case of one valuation report analyzing the actual land at issue, albeit commissioned by an interested party, and marketing material setting forth general information about land values in a megalopolis located 750 miles away on a different continent.

In fact, Trabzon is physically closer to the Asian countries of Iran, Georgia, and Armenia than it is to Greater Istanbul, the sole focus of the Colliers Review. And the suburban Istanbul city of Cerkezkoy is far closer to the European countries of Greece, Macedonia, and even Romania than it is to Trabzon. Even Commerce previously admitted that the Colliers Review says nothing about the land values in distant provinces such as Trabzon or their relationship to the Greater Istanbul market that is somewhat analyzed by Colliers. *Draft Results* at 19.

Commerce has done the equivalent of using a report of land values in Midtown Manhattan and applying them to subsidized property in Wichita Falls, Kansas or Brunswick, Georgia. And in the process, rejecting reports that actually analyze – and value – the subsidized property in Wichita Falls, Kansas or Brunswick, Georgia.

Commerce's attempt to justify using land values in Greater Istanbul for a lease in Trabzon also fails. It previously argued that of the eight areas of Greater Istanbul included in the Colliers Review, Cerkezkoy is the most similar to the undeveloped, reclaimed land in Trabzon at issue. *Draft Results* at 23. But that's like using data from Staten Island to value a lease in Idaho because of the Five Boroughs, Staten Island is the least densely populated and therefore *most* similar to Idaho. Staten Island might be more similar Idaho than Manhattan or Brooklyn, but still has almost no relationship to it. And it certainly should not be selected over a valuation report from an internationally respected firm, using standard valuation metrics, to determine the value of the actual land at issue.

This is simply not a case of two competing, but reasonable, reports. Accordingly, Commerce's use of the Colliers Review must be reconsidered and the CVD margin recalculated using the Cushman & Wakefield Report. *CS Wind*, 2025 WL 3496986, at *5.

**D. The Cushman & Wakefield Report demonstrates that reliance on data from Greater Istanbul is flawed and not supported by substantial evidence.**

Contrary to Commerce's argument, the record contains substantial evidence that property values from Greater Istanbul cannot be used as a proxy for land values 750 miles away, in the distant, rural region of Trabzon. The Colliers Review stated that industrial space in Greater Istanbul leased for 70 TL/m2 for Q2 2022 and 74.80 TL/m2 for Q4 2022. *See* P.R. 221, Ex. 1 at 10; Ex. 2 at 11. None of the listings identified by Cushman & Wakefield for Trabzon in 2022 even approach those values – with the average *asking* price being 5.40 TL/m2 and the *highest asking price* being 10.63 TL/m2. *See* C.R. 255, C&W Report at 28.

The record therefore contains substantial evidence demonstrating that land prices in Greater Istanbul are not reflective of the market in Trabzon. Obviously if industrial land in Trabzon was really worth 70-75 TL/m2, sellers would not be listing it for 5.40 TL/m2.

## CONCLUSION

For the reasons set forth above, Kaptan requests that this Court reject Commerce's use of the Colliers Review and remand for a redetermination using the Cushman & Wakefield Report to value the Nur Leasehold.

Respectfully submitted,

/s/Daniel L. Delnero
Daniel L. Delnero

**BGD LEGAL & CONSULTING**
3017 Bolling Way NE, Suite 130
Atlanta, GA 30305
daniel.delnero@bgdlc.com
(770) 864-7740

Date: May 4, 2026

*Counsel for Kaptan Demir Celik Endustrisi ve Ticaret A.S.*

21

## CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that Plaintiffs' Brief in Support for Their 56.2 Motion for Judgment on the Agency Record filed on May 4, 2026 complies with the word limitation requirement. The word count for Plaintiffs' Brief, as computed by word processing system is 6,659.

/s/Daniel L. Delnero
Daniel L. Delnero

**BGD LEGAL & CONSULTING**
3017 Bolling Way NE, Suite 130
Atlanta, GA 30305
daniel.delnero@bgdlc.com
(770) 864-7740

*Counsel for Kaptan Demir Celik Endustrisi ve Ticaret A.S.*