**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE**

|  |  |
|---|---|
| KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S., | ) ) ) ) |
| *Plaintiff,* | ) ) |
| and | ) ) |
| ÇOLAKOĞLU METALURJI A.Ş., | ) ) |
| and | ) ) |
| ÇOLAKOĞLU DIŞ TICARET A.Ş., | ) ) Court No. 25-00225 ) |
| *Plaintiff-Intervenors,* | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| *Defendant,* | ) ) |
| and | ) ) |
| REBAR TRADE ACTION COALITION, | ) ) |
| *Defendant-Intervenor.* | ) ) ) |
|  | ) |

**REPLY BRIEF FOR PLAINTIFF**
**KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S.**

Daniel L. Delnero
**BGD LEGAL & CONSULTING**
3017 Bolling Way NE, Suite 130
Atlanta, GA 30305
daniel.delnero@bgdlc.com
(770) 864-7740

*Counsel for Plaintiff Kaptan Demir
Celik Endustrisi ve Ticaret A.S.*

August 3, 2026

\

## **TABLE OF CONTENTS**

**INTRODUCTION**……………………………………………………………………...1

**ARGUMENT** …………………………………………………………………………..2

    A.  The Colliers Review Is Neither Comparable To The Cushman & Wakefield Report Nor A Reasonable Alternative to It…………………………………………………..3

        1.  The Colliers Review Is Not Comparable To The Cushman & Wakefield Report Because They Deal With Very Different Areas of Turkey……………….……….3

        2.  Reliance Solely On Data From Greater Istanbul To Value Land In Trabzon Is Not Reasonable…………………………………………………………………..4

    B.  Commerce's Rejection Of The Cushman & Wakefield Report I Not Supported By Substantial Evidence…………………………………………………………….....4

        1.  The Cushman & Wakefield Report Relied On Independent Governmental Sources Of Data For The 13 Rental Listings Used To Calculate The Average Rental Price Of 5.40 Turkish Lyra Per Square Meter……………………………………………...5

        2.  Kaptan Demonstrated That Land Values In Trabzon Differ From Those In Istanbul……………………………………………………………….......6

        3.  The Record Contains No Evidence That The Cushman & Wakefield Report Is A "Litigation-Inspired Fabrication"……………………………………………....8

    C.  Commerce's Use Of The Colliers Review Is Not Supported By Substantial Evidence…9

        1.  Cushman & Wakefield Relied On Publicly Available Data From An Official Turkish Government Website For The Underlying Data To Calculate Average Rent Values While Colliers Fails To Disclose What Data, If Any, On Which It Relied……………………………………………………………………......10

        2.  Colliers Does Not Disclose What Methodology It Used To Come Up With The 70 And 74.80 TL/M2 Valuations………………………………………………......11

        3.  The Colliers Review Is Not A Benchmark Of Real Estate Values For Trabzon……...........................................................................................13

**CONCLUSION**…………………………………………………………………...14

\

## TABLE OF AUTHORITIES

### CASES

*Cayuga Indian Nation of New York v. Pataki*,
83 F. Supp. 2d 318 (S.D.N.Y. 2000) ...................................................................................... 10

*Consol. Edison Co. v. NLRB,*
305 U.S. 197 (1938)…………………………………………………………………5

*DuPont Teijin Films USA, LP v. United States*,
407 F.3d 1211 (Fed. Cir. 2005) ...................................................................................... 4

*Lickteig v. Cerberus Cap. Mgmt., L.P.*,
589 F. Supp. 3d 302 (S.D.N.Y. 2022)…………………………………………………11

*Nippon Steel Corp. v. United States*,
337 F.3d 1373 (Fed. Cir. 2003)………………………………………………….5, 12

*Old Gate Partners, LLC v. Paddock Enterprises, LLC*,
2024 WL 3520168(D. Conn. May 30, 2024) ............................................................ 10

*Ozdemir Boru San. Ve Tic Ltd. Sti. v. United States*,
273 F. Supp. 3d. 1225, (C.I.T. 2017)……………………………………………...3

*Rhone-Poulenc, Inc. v. United States*,
927 F. Supp. 451 (Ct. Int'l Trade 1996)……………………………………………….12

*Water Pollution Control Auth. of City of Norwalk v. Flowserve US Inc.*,
No. 14-CV-00549, 2018 WL 1525709 (D. Conn. March 28, 2018) ......................................... 10

### STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i).................................................................................................. 4

### REGULATIONS

19 C.F.R. § 351.511(a)(2)(i)................................................................................................. 2, 12

\

## INTRODUCTION

This case presents what should be an easy issue to resolve: Whether Commerce's decision to use marketing material from Colliers International discussing real estate trends in Greater Istanbul to value land located 750 miles away in Trabzon rather than the Cushman and Wakefield Report that relies on actual real estate listings from Trabzon is supported by substantial evidence. The answer is plainly no.

Istanbul is the largest city in Europe with a per capita GDP over twice that of Trabzon. Meanwhile, Trabzon is a tertiary city in Eastern Turkey, closer to Iran, Armenia, and Georgia than to Istanbul. The average list price for land rents in Trabzon is 5.40 Turkish Lyra per square meter according to data from the official website of the General Directorate of National Real Estate, as reported in the Cushman & Wakefield Report. Commerce and the Rebar Trade Action Coalition ("RTAC"), however, seek to value the land at over 70 Turkish Lyra per square meter based on marketing material from Colliers that does not: 1) disclose any underlying data or methodology; 2) does not purport to follow any international valuation standards; and 3) states on its face that it is not a valuation and cannot be relied on as a valuation.

The difference in pricing between the Colliers Review and the actual real estate listings contained in the Cushman & Wakefield Report is staggering – over 12 times greater. In actuality, though, that differential should be expected. It is the equivalent of using pricing in New York, New York to value land in a city located 750 miles away, such as Myrtle Beach, South Carolina or Indianapolis. The two cities might be in the same country, but they are worlds apart in terms of population, GDP, and real estate values.

This case therefore presents a straightforward issue: is Commerce's fair market valuation of the Nur Leasehold supported by substantial evidence. The answer is also straightforward: No.

\

Commerce is attempting to use marketing material discussing real estate trends in Greater Istanbul to value land in a distant province, when actual real estate listings from that province show that the land is worth over 12 times less. Commerce and the RTAC attempt to obscure the simplicity of this case through various technical arguments, asking the Court to check its common sense at the door. Those efforts fall short. Kaptan has provided more than enough evidence to show that the Nur Leasehold is not worth anywhere near over 70 TL/m2, and in fact should be valued closer to 5.40 TL/m2, consistent with third-party listings contained on an official government website.

This case should therefore be remanded to Commerce with instructions to redetermine the value of the Nur Leasehold using the Cushman & Wakefield Report.

## ARGUMENT

The issue in this case is whether Commerce selected a reasonable benchmark to determine the fair market value of the Nur Leasehold, located in Trabzon. Under Commerce's regulations, the Secretary is to use *actual* market data to determine a *market-determined* price:

> The Secretary will normally seek to measure the adequacy of remuneration by comparing the government price to a market-determined price for the good or service resulting from actual transactions in the country in question. Such a price could include prices stemming from actual transactions between private parties or actual imports. In choosing such transactions or sales, the Secretary will consider product similarity; quantities sold or imported; and other factors affecting comparability.

19 C.F.R. § 351.511(a)(2)(i). The price actually paid by Nur is not in dispute; accordingly, only Commerce's calculation of the fair market value of the land is at issue.

Commerce's justification for selecting the Colliers Review comes down to one false premise: that the Colliers Review and Cushman & Wakefield Report are two comparable and reasonable benchmarks for valuing vacant land in Trabzon. Because both benchmarks are "comparable" and "reasonable," Commerce and the RTAC argue, Commerce has discretion to

2

\

select either report and is therefore justified in selecting the Colliers Review because it was not commissioned by an interested party. (*See, e.g.,* Dkt. No. 47 at 17-18.)

This core assumption is false: the Cushman & Wakefield Report and Colliers Review are not comparable, and reliance on the Colliers Review is not reasonable.

**A. The Colliers Review Is Neither Comparable To The Cushman & Wakefield Report Nor A Reasonable Alternative To It.**

**1. The Colliers Review Is Not Comparable To The Cushman & Wakefield Report Because They Deal With Very Different Areas Of Turkey.**

The Colliers Review is not comparable to the Cushman & Wakefield Report principally because the Colliers Review does not discuss, in any way, shape, or form, real estate values for Trabzon, located in Eastern Turkey near the border with Iran. Instead, the Colliers Review only discusses real estate trends in Greater Istanbul, in far Western Turkey and the largest city in Europe. *See* P.R. 221, Ex 1, Colliers Review I at 8.

This Court previously held that land values in Greater Istanbul are not comparable to those in other regions of Turkey and, therefore, cannot be used to determine adequate renumeration for other regions thereof. *See Ozdemir Boru San. Ve Tic Ltd. Sti. v. United States*, 273 F. Supp. 3d. 1225, 1249-53 (C.I.T. 2017) (rejecting Commerce's use of a benchmark that included land values in Istanbul to determine the value of land in a lesser developed area of Turkey). The *Ozdemir* court held that the benchmark used by Commerce was "distorted" and not supported by substantial evidence because it included sales of Istanbul properties in addition to properties in lesser developed regions. *Id.* at 1252-53.

Commerce attempts to distinguish *Ozdemir* by pointing out that a benchmark need not be a "perfect" match. Fair enough. For example, Commerce would likely be justified in using a benchmark containing results from one region of Istanbul to value a leasehold in another. And Commerce would likely be justified in using data from a neighboring province of Trabzon to value

3

\

the Nur Leasehold. But Greater Istanbul is, quite simply, too different from distant provinces in Turkey to be used. *Id.* at 1252-53. And if Greater Istanbul is not sufficiently comparable to be included in a basket of other transactions, then surely it is not sufficiently comparable to be used as the *sole source* of valuation.

### 2. Reliance Solely On Data From Greater Istanbul To Value Land In Trabzon Is Not Reasonable.

Reliance on the Colliers Review is not reasonable for much the same reason. It does not discuss any regions even bordering Trabzon, instead limiting its analysis to a selection of neighborhoods in Greater Istanbul. *See* P.R. 221, Ex 1, Colliers Review I at 8. The Cushman & Wakefield Report, by contrast, determined the value by examining 13 rental listings of comparable properties actually located in Trabzon. *See* C.R. 255, C&W Report at 28.

Thus, one benchmark discusses general trends in the Greater Istanbul market, and the other analyzes actual real estate values in Trabzon. The two benchmarks are not comparable, nor do they report to be. And use of the former to value land located in the focal point of the latter is not reasonable. For these reasons alone, the Court should reverse and remand the case with instructions to value the Nur Leasehold in accordance with the Cushman & Wakefield Report. In addition, however, Commerce's secondary justifications for rejecting the Cushman & Wakefield Report and accepting the Colliers Review are without merit.

### B. Commerce's Rejection Of The Cushman & Wakefield Report Is Not Supported By Substantial Evidence.

Under the substantial evidence test, this Court "shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The Court assesses whether the agency action is "unreasonable" given the record as a whole. Substantial evidence represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont*

4

\

*Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005), quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938); *see also Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003).

Commerce argues that it was correct to disregard the Cushman & Wakefield Report for the following reasons: 1) the Report relied on information supplied by Kaptan; 2) Kaptan failed to demonstrate that land values in Trabzon differ from those in Istanbul; and 3) the Report carried a risk of being a litigation-inspired fabrication. (Dkt. No. 47 at 15-17.) None of these arguments are supported by substantial evidence.

**1. The Cushman & Wakefield Report Relied On Independent, Governmental Sources Of Data For The 13 Rental Listings Used To Calculate The Average Rental Price Of 5.40 Turkish Lyra Per Square Meter.**

The Cushman & Wakefield Report relied on 13 listings when calculating the "Comparable Approach (for Rental Land in Trabzon)" and three listings when calculating the "Comparable Approach (Coastal and Filled Areas Rented by Government)." C.R. 255, C&W Report at 28-29. The Report then lists the source of these listings: an official Turkish government website of the General Directorate of National Real Estate ("www.milliemlak.gov.tr."). *Id.* at 29. It is worth noting that from 1909 to 2018, the General Directorate of National Real Estate functioned directly under the Ministry of Finance of Turkey to manage state and Treasury properties. In July 2018, Presidential Decree No. 1, it was transferred to the Ministry of Environment, Urbanization and Climate Change though it still coordinates with the Ministry of Treasury and Finance of Turkey today. Thus the underlying data used to calculate the value of rental listings in Trabzon by Cushman & Wakefield, was derived from an official and authoritative Turkish government source (noted by the .gov and .tr in the website address). *Id.* The data was not, as Commerce appears to argue, provided by Kaptan.

5

\

Commerce claims that the Cushman & Wakefield Report "does not reveal the underlying information used by C&W for 'Rent Analysis,' 'Comparison Method (Based on the Land for Rent Currently[sic] Market),' or 'Comparison Method (Based on Leasehold Lands by Government)."' (Dkt. No. 47 at 15.) That is simply not correct. The Cushman & Wakefield Report discloses the exact source of data for this critical underlying information: an official Turkish government website of the General Directorate of National Real Estate. C.R. 255, C&W Report at 28-29.

Commerce is correct that the Cushman & Wakefield Report does include some information supplied by Kaptan. For example, the Cushman & Wakefield Report includes information regarding the terms of the lease between Nur and the Government, details of the improvements Nur made to the property (at its own expense), and various approvals and permits Nur obtained related to the property. This data, however, was not used, in any way, to calculate the average rental prices in Trabzon. C.R. 255, C&W Report at 28-29. Those values were determined based on actual rental listings obtained from the General Directorate of National Real Estate website, not Kaptan. *Id.*

### 2. Kaptan Demonstrated That Land Values In Trabzon Differ From Those In Istanbul.

Commerce next argues that "Kaptan failed to place adequate information on the record to substantiate a quantifiable link between the presence of distance from Nur's land, among other factors, and an effect on industrial rents." (Dkt. No. 47 at 16.) This argument asserts that Kaptan is required to assign some "specific effect" to each of the distinguishing factors Kaptan identified to differentiate values for industrial rents in Greater Istanbul with those of undeveloped, reclaimed, non-industrial land in the distant province of Trabzon. (*Id.*) Commerce and RTAC, however, have never pointed to any requirement that Kaptan not only identify differences in the value of land in Istanbul from Trabzon, but also assign to each distinguishing factor between the two regions a

6

specific impact driving the difference – e.g., distance from Istanbul accounts for X percentage, the fact that per capita GDP is 50% lower in Trabzon accounts for Y percentage, and so on.

Aside from being virtually impossible to quantify the "specific effect" each distinguishing factor has on the overall price, Commerce and RTAC have cited to nothing in the law or record saying Commerce may use a benchmark showing values 12 times higher than the average list prices for the region in question.

Here's what Kaptan did show. The average asking price for land in Trabzon was 5.40 TL/m2 in 2022, and the highest asking price was 10.63 TL/m2, according to data publicly available on an official Turkish government website. C.R. 255, C&W Report at 28. The Colliers Review, by contrast, stated that industrial space in Greater Istanbul leased for 70 TL/m2 for Q2 2022 and 74.80 TL/m2 for Q4 2022. See P.R. 221, Colliers Review I at 10; Colliers Review II at 11. Kaptan then identified several factors that could explain this massive difference in rental values. GDP per capita in 2021 was $13,914USD in Istanbul, $6,079USD in Trabzon, and $8,598USD in all of Turkey, according to TURKSTAT, 2021. C.R. 255, C&W Report at 12. Per capita GDP in Trabzon was therefore less than 50% of that in Istanbul and around 25% less than Turkey as a whole. *Id.* Trabzon is located in Northeastern Turkey, on the Black Sea, while Istanbul is located 750 miles to the West, on the waterway linking the Black Sea to the Mediterranean. *Id.* at 11. As Cushman & Wakefield further reasoned:

> It should be noted that given regions [of Greater Istanbul discussed in the Colliers Review] are major industrial zones in Turkey. Trabzon is [a] tertiary city in terms of population and economy (GDP per capita can be seen below). It is not classified as an industrial zone, the city is not preferred by national and international industrial investor[s] or occupiers. . . . Rent prices are quite low when compare[d] to North Mamara region. And also the given prices [in the Colliers Review] are for industrial facilities rather than vacant land [the Nur Leasehold was vacant land]. *Id.* at 21.

\

The Cushman & Wakefield Report therefore identified 13 real estate listings *in Trabzon* with an average list price of 5.40 TL/m2 and a high price of 10.63 TL/m2. *Id.* at 28. It then offers several factors to explain the massive difference in Trabzon prices from the much higher prices discussed for Greater Istanbul in the Colliers Review. *Id*. at 11-21. Commerce and RTAC's arguments that Kaptan failed to identify differences in land values between Istanbul and Trabzon is therefore without merit.

### 3. The Record Contains No Evidence That The Cushman & Wakefield Report Is A "Litigation-Inspired Fabrication."

Cushman & Wakefield's data and methodology to calculate average rental values in Trabzon is very straightforward and relies on elementary school math. Cushman & Wakefield accessed the official Turkish government website containing rental listings and identified 13 listings in Trabzon. C.R. 255, C&W Report at 28-29. Cushman and Wakefield then confirmed with the General Directorate of National Real Estate that only list prices are available and that the General Directorate does not disclose the completed transactions. *Id.* at 29. Cushman & Wakefield then added the 13 list prices together and divided by 13 to calculate the average rental price of 5.40 TL/m2. *Id.* at 28-29.

Accordingly, anyone with the ability to add and divide could check Cushman & Wakefield's work.

Commerce, however, argues that the Cushman & Wakefield Report risks being a litigation-inspired fabrication "due to when it was prepared, the manner in which it was prepared, and who commissioned the report and provided the underlying data to C&W." (Dkt. No. 47 at 17.) None of these factors carry any indicia of litigation-inspired fabrication.

The Report was prepared June 23, 2023 – 6 months after the period of review. C.R. 255, C&W Report at 1. And there would be no need to determine average real estate prices in Trabzon

8

\

prior to Commerce's decision to countervail the Nur Leasehold for the 2022 period of review. The "manner in which [the Report]" was prepared carries even less risk of litigation-inspired fabrication. All Cushman & Wakefield did was add the 13 list prices together and divide by 13 to calculate the average. *Id.* at 28. The source of the 13 rental listings was the official governmental website of the General Directorate of National Real Estate, not Kaptan. *Id.* at 29. The Report does admit that it was prepared for Kaptan but also indicates that it was "prepared in accordance with the RICS Valuation Standards." *Id.* at 5.

Significantly, Commerce does not identify any property listings in Trabzon that Cushman & Wakefield failed to include. Nor does Commerce allege that Cushman & Wakefield made any errors adding the 13 listings together or dividing them by 13 to calculate the average. Finally, Commerce fails to identify any differences between the Nur Leasehold land and the 13 properties listed in the Cushman & Wakefield Report tending to indicate that the Nur Leasehold is 12 times more valuable than the average of those properties. (Dkt. No. 47 at 17.)

Commerce and RTAC's "risk-inspired fabrication" arguments thus have no support in the record and, in fact, rely on inaccurate arguments regarding the source of data and methodology contained in the Cushman & Wakefield Report.

### C. Commerce's Use Of The Colliers Review Is Not Supported By Substantial Evidence.

Commerce argues that its "decision to select an independently prepared and public report, rather than a report commissioned for a specific party and for a specific reason (and based on data that Kaptan provided to C&W, but not to Commerce), is reasonable and supported by substantial evidence when evaluated against Commerce's historical preference to use benchmarks from independent, third-party sources." (Dkt. No. 47 at 18-19.) There are several problems with this argument. First, *only* the Cushman & Wakefield Report relies on independent, publicly available

\

data. Second, *only* the Cushman & Wakefield Report discloses its actual methodology. And third, *only* the Cushman & Wakefield Report even purports to value land in Trabzon, the location of the Nur Leasehold.

### 1. Cushman & Wakefield Relied On Publicly Available Data From An Official Turkish Government Website For The Underlying Data To Calculate Average Rent Values While Colliers Fails To Disclose What Data, If Any, On Which It Relied.

As discussed above, the Cushman & Wakefield Report relied on publicly available real estate listings found on the official website of the General Directorate of National Real Estate, not Kaptan. C.R. 255, C&W Report at 29. The Colliers Review, by contrast, does not disclose what underlying data, if any, it used to calculate the value of industrial properties in Greater Istanbul. Instead it simply states: "Sources: Colliers International." P.R. 221, Ex. 1 at 10, P.R. 221, Ex. 2 at 11.

Federal Courts routinely reject valuation reports for failure to disclose the underlying data or where the underlying data is unreliable. *See, e.g., Cayuga Indian Nation of New York v. Pataki*, 83 F. Supp. 2d 318, 324 (S.D.N.Y. 2000) ("Obviously, to the extent the sales data used in the first step of this process is inaccurate, it significantly impacts all subsequent calculations upon which it is based. . . . [B]ecause the reliability of Havemeyer's data is uncertain, the reliability of his fair market value in any given year, based upon that data, strongly suggests that his appraisal may potentially suffer from a significant rate of error."); *Water Pollution Control Auth. of City of Norwalk v. Flowserve US Inc.*, No. 14-CV-00549, 2018 WL 1525709, at *17 (D. Conn. March 28, 2018), *aff'd*, 782 Fed. Appx. 9 (2d Cir. 2019) (excluding an expert's opinion due to the expert's "failure to disclose the calculations and data on which her opinions are based"); *Old Gate Partners, LLC v. Paddock Enterprises, LLC*, 2024 WL 3520168, at *11 (D. Conn. May 30, 2024) (rejecting a valuation report for failure to disclose the underlying data used).

10

\

This case is a prime example of why disclosure of underlying data is important. Commerce and the Court can easily check Cushman & Wakefield's work by reviewing the data listed on the General Directorate of National Real Estate's website, making sure Cushman & Wakefield reported that data accurately, and making sure Cushman & Wakefield accurately calculated the average per-square-meter rental price in Trabzon. The same cannot be said about the Colliers Review. It does not disclose a single piece of underlying data. We do not even know if it actually relies on particular data and listings as opposed to educated guesses from Colliers International employees.

2. **Colliers Does Not Disclose What Methodology It Used To Come Up With The 70 And 74.80 TL/M2 Valuations.**

In addition to not disclosing any underlying data, Colliers International also does not disclose the methodology used to determine the values for industrial properties in the Cerkezkoy region of Greater Istanbul. P.R. 221, Ex. 1 at 10, P.R. 221, Ex. 2 at 11. Unlike the Cushman & Wakefield Report, which follows the RICS Red Book standards for property valuation, *see* C.R. 255, C&W Report at 5, the Colliers Review does not claim to follow any internationally recognized methodology. The Colliers Review thus lacks one key indicia of reliability that courts use when considering whether to accept expert reports. *See Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 332 (S.D.N.Y. 2022) (permitting reliance on standard valuation methodologies where it was clear that the expert "applied such industry-standard valuation methodologies").

Colliers' failure to disclose the underlying data and methodology is particularly significant given Commerce's regulatory preference for using "actual transactions" when determining adequate renumeration/fair market value. 19 C.F.R. § 351.511(a)(2)(i) ("The Secretary will normally seek to measure the adequacy of remuneration by comparing the government price to a market-determined price of the good or service in question."). As the Cushman & Wakefield

11

\

Report demonstrates, there are multiple methods of valuing land, some of which rely on comparable market transactions while others rely on more indirect methodologies such as examining investment into the property or market turnover. C.R. 255, C&W Report at 28-32.

The Cushman & Wakefield Report includes various methodologies, including comparison of similar market transactions in Trabzon to more indirect methods. *Id.* Kaptan suggests that the most appropriate method under Commerce regulations is the average of actual rental listings in Trabzon, which yields a value of 5.40 TL/m2, even though that results in a higher value than some of the indirect methods. *Id.*

But we simply have no way of knowing whether the Colliers Review used a methodology that comports with § 351.511(a)(2)(i)'s preference for actual market transactions as the Review does not disclose the methodology used. For this reason too, the Commerce lacks any evidence – substantial or otherwise – to conclude that the Colliers Review supports a conclusion as to the fair market value of the Nur Leasehold. *See Rhone-Poulenc, Inc. v. United States*, 927 F. Supp. 451, 454 (Ct. Int'l Trade 1996) (holding that a Commerce determination must be reversed "where Commerce has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions.") Simply put, Commerce has failed to put forth evidence sufficient that "a reasonable mind might accept as adequate to support a conclusion" that the Colliers Review is a reasonable benchmark for valuing the Nur Leasehold. *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003).

### 3. The Colliers Review Is Not A Benchmark Of Real Estate Values For Trabzon.

Unlike in cases where Commerce has discretion to chose among two reasonable and comparable benchmarks, here only one benchmark even attempts to value land in Trabzon generally or the Nur Leasehold specifically: the Cushman & Wakefield Report. This is true for two reasons. First, the Colliers Review only discusses real estate trends in Greater Istanbul. P.R. 221,

12

\

Ex. 1 at 10, P.R. 221, Ex. 2 at 11. Nothing in the document even purports to analyze, or even discuss, real estate trends in tertiary cities located 750 miles away. *Id*. Second, the Colliers Review is not a valuation or a benchmark at all:

> This report gives information based primarily on Colliers International data, which may be helpful in anticipating trends in the property sector. However, no warranty is given as to the accuracy of, and no liability for negligence is accepted in relation to, the forecasts, figures or conclusions contained in this report *and they must not be relied on for investment or any other purposes. This report does not constitute and must not be treated as investment or valuation advice or an offer to buy or sell property.*

*See* P.R. 221, Ex. 1, Colliers Review I at 21; and Ex. 2; Colliers Review II at 21 (Emphasis added.).

Instead, the Colliers Review is more akin to a marketing brochure designed to demonstrate Colliers' knowledge of the Greater Istanbul real estate market. It does not purport to follow the RICS Red Book or any other recognized valuation standards, does not disclose any of its underlying data, and does not disclose its methodology. P.R. 221, Ex. 1 at 10, P.R. 221, Ex. 2 at 11. It simply provides two conclusory numbers – one for industrial rents in Cerkovzky in the second quarter 2022 and another for rents in the fourth quarter 2022. *Id.* That's fine for a marketing brochure, but as even Colliers acknowledges, it cannot, and should not, be used for valuation purposes. P.R. 221, Ex. 1, Colliers Review I at 21; and Ex. 2; Colliers Review II at 21.

Commerce argues that Kaptan waived the right to rely on the Colliers' disclaimer even though Commerce is the entity urging reliance on the Review. Even if the Court does not consider the fact that Colliers *itself* disclaims that the Review *is not valuation advice* and *must not be relied upon*, it is nevertheless obvious that the Colliers Review is not a valuation and cannot be relied upon for the reasons set forth above.

**CONCLUSION**

\

Kaptan respectfully requests that this Court remand this case to Commerce with instructions to redetermine the CVD by using the 5.40TL/m2 valuation contained in the Cushman & Wakefield Report.

Respectfully submitted,

/s/Daniel L. Delnero
Daniel L. Delnero

**BGD LEGAL & CONSULTING**
3017 Bolling Way NE, Suite 130
Atlanta, GA 30305
daniel.delnero@bgdlc.com
(770) 864-7740

Date: August 3, 2026

*Counsel for Kaptan Demir Celik Endustrisi ve Ticaret A.S.*

14

\

## CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that

Plaintiffs Reply Brief filed on August 3, 2026 complies with the word limitation requirement. The

word count for Plaintiff's Reply Brief, as computed by word processing system is 4,367.


/s/Daniel L. Delnero
Daniel L. Delnero

**BGD LEGAL & CONSULTING**
3017 Bolling Way NE, Suite 130
Atlanta, GA 30305
daniel.delnero@bgdlc.com
(770) 864-7740

Date: August 3, 2026

*Counsel for Kaptan Demir Celik Endustrisi ve*

15